UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

SANDRA A. o/b/o E.G.A.,[1]

      Plaintiff,

   v.

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

24-CV-6474-MAV
**DECISION AND ORDER**

---

## INTRODUCTION

Sandra A. ("Plaintiff") brought this action pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of the United States Social Security Administration ("Commissioner"), denying her application for Supplemental Security Income ("SSI") on behalf of her minor child, E.G.A. *See* ECF No. 1; 42 U.S.C. §§ 405(g). The parties filed cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. ECF Nos. 8, 10. Plaintiff filed a reply. ECF No. 12.

For the reasons set forth below, the Court grants Plaintiff's motion, ECF No. 8, and denies the Commissioner's cross-motion, ECF No. 10.

---

[1] The Court's Standing Order issued on November 18, 2020, directs that "in opinions filed pursuant to ...42 U.S.C. § 405(g), in the United States District Court for the Western District of New York, any non-governmental party will be identified and referenced solely by first name and last initial."

## PROCEDURAL HISTORY

The Court assumes the reader's familiarity with the facts and procedural history in this case and therefore addresses only those facts and issues which bear directly on the resolution of the motions presently before the Court.

### I. Plaintiff's Application

On March 14, 2022, Plaintiff filed an application for SSI on behalf of E.G.A., alleging a disability onset date of March 9, 2021, due to trauma and stressor-related disorder, oppositional defiance disorder, attention deficit hyperactivity disorder ("ADHD"), anxiety disorder, and hearing loss. Administrative Record ("AR") at 164–69, 176, 193–201, 222–26, 229–33.[2] The claim was initially denied by the Social Security Administration ("SSA") in July 2022 and on reconsideration in March 2023. *Id.* at 17, 52–69. Thereafter, Plaintiff timely requested a hearing. *Id.* at 92–93.

### II. Plaintiff's Hearing Before the ALJ

On September 19, 2023, an Administrative Law Judge ("ALJ") held a hearing during which Plaintiff testified telephonically. *Id.* at 17, 28, 31. E.G.A. was born in 2010 and was a school-aged child at the time of his application and hearing. *Id.* at 37, 174. E.G.A. has no work history. *Id.* at 173. Plaintiff was represented by a non-attorney representative. *Id.* at 17, 30–32. Plaintiff testified that what caused her to file the SSI application on behalf of her son was him experiencing "a lot of anxiety and abuse around that time. The person that was [responsible for] his care abused

---

[2] When referencing the page number(s) of citations to the administrative record in this Decision and Order, the Court cites to the SSA citations located at the bottom right of the papers.

him. And as of right now, he's in therapy with a psychiatrist. And in May and June 2021, he was involved in a hit and run. And after that hit and run, he [doesn't] think the same. He [doesn't] make good choices like he used to." *Id.* at 39.

### III. The ALJ's Decision

Individuals under eighteen (18) years old are considered disabled when the individual "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(C)(i). In evaluating disability claims in children, the Commissioner is required to use the three-step process promulgated in 20 C.F.R. § 416.924.

The first step requires the ALJ to determine whether the child is engaged in "substantial gainful activity." *See* 20 C.F.R. § 416.924(a). Here, the ALJ found E.G.A. had not been engaged in substantial gainful activity since March 14, 2022—the date of the SSI application.[3] AR at 18. The second step requires the ALJ to determine whether the child has any severe impairments, defined as anything that causes "more than minimal functional limitations." 20 C.F.R. § 416.924(a), (c). Here, the ALJ found E.G.A. had the following severe impairments: ADHD, anxiety disorder, and hearing loss. AR at 18.

---

[3] The earliest month for which SSI can be paid is the month following the month in which the application was filed. 20 C.F.R. § 416.335.

Finally, the ALJ determines whether the child's impairment or combination of impairments meets, medically equals, or functionally equals the severity of a listed impairment. *Tyler J. o/b/o R.D. v. Comm'r of Soc. Sec.*, No. 1:20-CV-899-DB, 2024 WL 475067, at *1–2 (W.D.N.Y. Feb. 7, 2024) (citing 20 C.F.R. §§ 416.925, 416.926). If the ALJ finds that the child's impairment or combination of impairments meets or equals a listing, the child is then considered disabled. 20 C.F.R. § 416.924(d)(1). If not, the ALJ must assess the "functional equivalence" of the limitation or limitations in six domains of functioning:

1. Acquiring and using information;
2. Attending and completing tasks;
3. Interacting and relating with others;
4. Moving about and manipulating objects;
5. Caring for yourself; and
6. Health and physical well-being.

*Id.* at § 416.926a(b)(1); *see, e.g., Andrea L. H. o/b/o M.E.O. v. Comm'r of Soc. Sec.*, No. 1:19-CV-01316(JJM), 2021 WL 9595952, at *3 (W.D.N.Y. Mar. 24, 2021). When determining functional equivalence, the "whole child" must be considered, by considering how the child functions at home, at school, and in the community; the interactive and cumulative effects of all of the child's medically determinable impairments on the child's activities; and the type, extent, and frequency of help the child needs. Social Security Ruling ("SSR") 09-1p, Title XVI: Determining Childhood Disability Under the Functional Equivalence Rule — The "Whole Child" Approach, 74 Fed. Reg. 7527 (S.S.A. Mar. 19, 2009); *Hicks o/b/o A.D.H. v. Comm'r of Soc. Sec.*, No. 18-cv-00467, 2020 WL 1061488, at *6 (W.D.N.Y. Mar. 5, 2020) ("The SSR is clear that there is a 'whole child' approach for determining functional equivalency and that

4

the rating of limitation of a domain is not an 'average' of what activities the child can and cannot do." (citing SSR 09-1p)); *Carrera v. Colvin*, No. 1:13-cv-1414, 2015 WL 1126014, at *3 (N.D.N.Y. Mar. 12, 2015). "All of the relevant evidence includes objective medical evidence and other relevant evidence from medical sources; information from other sources, such as school teacher[s], family members, or friends; the claimant's statement (including statements from the claimant's parent(s) or other caregivers); and any other relevant evidence in the case record, including how claimant functions over time and in all settings (i.e., at home, at school, and in the community)." *Carrera*, 2015 WL 1126014, at 3, n.8; *accord* SSR 2009-2p, 2009 SSR LEXIS 2, *7 (SSA Feb. 18, 2009).

The child is classified as disabled if the child has a "marked" limitation in any two domains of functioning or an "extreme" limitation in any one domain. 20 C.F.R. § 416.926a(d). A "marked" limitation exists when the impairment or cumulative effect of the impairments "interferes seriously with [the child's] ability to independently initiate, sustain, or complete activities." *Id.* at § 416.926a(e)(2)(i). An "extreme" limitation is an impairment which "interferes very seriously" with the child's ability to independently initiate, sustain, or complete activities. *Id.* at § 416.926a(e)(3)(i). If the child has an impairment that meets, and medically or functionally equals the listings, and the impairment meets the Social Security Act's (the "Act") duration requirement, the ALJ will find the child disabled. *Id.* at § 416.924(d).

"In claims involving childhood disability, the SSA provides additional regulatory and administrative standards for determining whether a child has a 'marked' or 'extreme' limitation." *Jimenez o/b/o D.S.J. v. Comm'r of Soc. Sec.*, No.

21-CIV-2030-KMK-AEK, 2022 WL 4085953, at *3 (S.D.N.Y. Aug. 18, 2022), *report and recommendation adopted sub nom.*, 2022 WL 4087958 (S.D.N.Y. Sept. 6, 2022). "To have a marked or extreme limitation in a particular domain, it is not necessary that all activities or functions within the domain be restricted." *Id.* "Rather, a marked or extreme limitation may be present 'when [a child's] impairment(s) limits only one activity [within the domain] or when the interactive and cumulative effects of [his or her] impairment(s) limit several activities.'" *Id.* (quoting 20 C.F.R. §§ 416.926a(e)(2)(i), (e)(3)(i)). Additionally, the Commissioner must consider the "interactive and cumulative effects" of a child's impairment(s), as the combined results of multiple less-than-marked impairments may be marked or extreme. *Id.* (quoting 20 C.F.R. § 416.926a(c)). Finally, the Commissioner must assess whether any particular limitation may have effects in more than one domain. *Id.* Because "any given impairment may have effects in more than one domain," it is necessary to "evaluate the limitations from [a child's] impairment(s) in any affected domain(s)." *Id.* (quoting 20 C.F.R. § 416.926a(c)).

Here, the ALJ found that E.G.A. has no limitation in acquiring and using information or in moving about and manipulating objects, and less than a marked limitation in the following functional areas: attending and completing tasks, interacting and relating with others, ability to care for himself, and health and physical well-being. AR at 19. Consequently, the ALJ concluded that E.G.A. was not "disabled" under the Act. *Id.* at 23; 20 C.F.R. § 416.924(a). This appeal followed. *See* 42 U.S.C. § 405(g).

**LEGAL STANDARD**

Congress has authorized federal courts to engage in limited review of final Social Security benefits decisions. *See* 42 U.S.C. § 405(g). The Court's scope of review is limited to whether the Commissioner's determination is supported by substantial evidence in the record and whether the Commissioner applied the correct legal standards. *See id.*; *Rucker v. Kijakazi*, 48 F.4th 86, 90–91 (2d Cir. 2022).

"'Failure to apply the correct legal standard constitutes reversible error, including in certain circumstances, failure to adhere to the applicable regulations.'" *Douglass v. Astrue*, 496 F. App'x 154, 156 (2d Cir. 2012) (quoting *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008) (remanding for non-compliance with regulations)). Federal courts review *de novo* whether the correct legal principles were applied and whether the legal conclusions made by the ALJ were based on those principles. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987).

If the reviewing court is satisfied that the ALJ applied the correct legal standards, then it must "conduct a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision." *Schillo v. Kijakazi*, 31 F.4th 64, 74 (2d Cir. 2022) (noting it is not a federal court's function to determine *de novo* whether a plaintiff is disabled). "The substantial evidence standard means once an ALJ finds facts, [the Court] can reject those facts only if a reasonable factfinder would have to conclude otherwise." *Id.* (quotations and emphasis omitted); *see Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (reiterating "substantial evidence" is "more than a mere scintilla" and not a high evidentiary burden to satisfy). In other words, "[i]f evidence

is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld." *Schillo*, 31 F.4th at 74 (quotation omitted). The Court "require[s] that the crucial factors in any determination be set forth with sufficient specificity to enable [it] to decide whether the determination is supported by substantial evidence." *Id.* (quotation omitted).

## DISCUSSION

On appeal, Plaintiff argues that the ALJ's functional equivalence findings were unsupported by the record. ECF No. 8-1 at 1. At a high level, Plaintiff takes issue with the ALJ's: (1) consideration of the opinions of two state agency psychologists; (2) "[e]valuation of symptomology and mischaracterization of the evidence;" and (3) failure to develop the record. *Id.* at 10–30. In response, the Commissioner contends that the ALJ's findings are supported by substantial evidence, that the ALJ properly considered the full record available, and that Plaintiff's representative waived any argument regarding a deficient record at the hearing. ECF No. 10-1 at 7–16.

The Court finds that remand is warranted due to the ALJ's failure to develop the record and failure to support his findings with substantial evidence, at a minimum, as it pertains to E.G.K.'s educational experiences. The "whole child"—"how the child functions at home, at school, and in the community,"—must be considered, SSR 09-1p, and it is apparent that the missing, as well as the available-but-undiscussed, school records are necessary to accurately assess E.G.K.'s functional limitations, particularly with respect to the areas of acquiring and using information; attending and completing tasks; and interacting and relating with others.

There are three 504 Plan's[4] in the administrative record—one dated February 8, 2023, AR at 588–89 (Exhibit 8F at 2–3); one dated June 5, 2023, *id.* at 591–92 (Exhibit 9F at 2–3); and one dated September 6, 2023, *id.* at 594–95 (Exhibit 9F at 5–6). The February 2023 504 Plan addressed the 2022–2023 school year, while the June and September plans pertained to the 2023–2024 school year. *Id.* at 588, 591, 594. The June 2023 plan appears to be missing one of its three pages. *See id.* at 591–92 (denoting pages 1 and 3 "of 3"); ECF Nos. 8-1 at 13, 19; 10-1 at 8.

The February and June 2023 plans are formatted similarly and both include a "Behavioral Need" statement, noting: "Dr. Note: Diagnosis of ADHD and Trauma and Stress Related Disorder-History of trauma, anxiety, hyperactivity and oppositional behavior. Increased difficulty attending school and navigating peer conflicts." AR at 588, 591. The February plan states on its second page that E.G.K. "does not need a behavior plan." *Id.* at 589. The seemingly corresponding page from the June plan is not part of the record. *See id.* at 591–92. The June plan indicates an increased "Behavioral Need," adding the following above and beyond the February plan: "Dr. Note-Strong Support of a 504 plan including transportation services from home for [E.G.K.]. [E.G.K.] receives individual/family therapy related to his diagnosis . . . ." *Id.* at 591. It is not clear whether the language in the second Behavioral Need statement continues onto the apparently missing second page of the June 2023 plan.

---

[4] "A 504 plan summarizes accommodations made for students with conditions that affect their ability to learn, behavior, or emotional status that do not rise to the level of disabilities under the Americans with Disabilities Act." *Benbynek o/b/o C.R.E. v. Kijakazi*, No. 23-CV-514-A, 2024 WL 343135, at *3 n.2 (W.D.N.Y. Jan. 30, 2024) (quotation omitted).

The September 6, 2023 plan, applicable to the 2023–2024 school year, is formatted differently, and identifies, *inter alia,* that there was a "Medical Specialist Evaluation" from May 11, 2023, that E.G.K. requires special transportation services for eighth grade, and that his impairment, listed as "[e]motional or mental illness," "substantially limits the following major life activity(ies)": "learning, concentrating, and thinking, which adversely affects appropriate participation in academic activities."[5] *Id.* at 594–95.

The administrative record also contains a Grade Report for the full 2022–2023 school year—what was seventh grade for E.G.K. *Id.* at 590. E.G.K.'s quarterly G.P.A.'s were: 2.13 for Q1; 1.88 for Q2; 1.38 for Q3; and 1.44 for Q4. *Id.* A simple average of these figures yields a 1.71 G.P.A. for seventh grade. *See id.* Of his nine letter-graded classes, E.G.K. received an "F" or a "D" at the following frequencies: 2 of 9 classes in Q1; 4 of 9 in Q2; 6 of 9 in Q3; and 6 of 9 in Q4. *Id.* E.G.K.'s full-year grades for the seventh grade amounted to four "F's," one "D," a "C" and a "C+," and two "B+'s." *Id.* The teacher-comments listed on the Grade Report are as follows:

- Algebra Teacher: "[E.G.K.] is a pleasure to have in class but his poor attendance is affecting grade."

- English Teacher: "Student is making no effort to pass."

- Health Teacher: "Excessive tardiness is affecting grade."

- "Learning Lab" Teacher: "Classwork is rarely completed or done well. Poor attendance is affecting grade."

- "Living Environment" Teacher: "Poor attendance is affecting grade. Displays inconsistent effort."

---

[5] Capitalization omitted and punctuation added.

10

- Music Teacher: "Poor attendance is affecting grade."

- Social Studies Teacher: "Inconsistent work completion. Poor attendance is affecting grade. Classwork is rarely completed or done well."

*Id.* The 2022–2023 Grade Report notes that E.G.K. was absent from school that year a total of 83 times and was tardy 17 times—the occurrences of both being spread relatively consistently across the four quarters of the school year. *Id.* There are no other Grade Reports or directly sourced academic reports in the record.

At the September 2023 hearing, Plaintiff testified, *inter alia*, that:

Plaintiff: Well, his behavior in school—last year was a really, really tough year. I believe his, you know, the transition from . . . sixth to seventh. He was—I had a lot of calls from the administrator about his mouth and how he was saying a lot of hurtful things to students. But then again, there were students that would throw pencils at him and pick on him, so. His outbursts are kind of crazy. He is very like—he wants to throw things. He wants to hit me. He wants to kick things. . .

ALJ: Was he suspended or removed from school at any point?

Plaintiff: He was removed from the school, and he was brought to me.

ALJ: Was there suspension attached to that?

Plaintiff: No. They really did not want to suspend him because they know that he's going through something, he's going through a lot of stuff.

*Id.* at 43.

Dr. A. Chapman's and Dr. M. Juriga's state agency evaluations, both of which the ALJ found "persuasive," *see id.* at 20–22, include the following indirect academic evidence. Both evaluations specify that E.G.K. required "[n]o special education services. No issues noted in th[e] area [of acquiring and using information]. MER

11

indicates claimant gets good grades." *Id.* at 57, 66. With respect to the functional area of attending and completing tasks, both evaluations state, "Outpatient tx notes child struggling with focus and inattention at school." *Id.* Dr. Juriga's evaluation of the functional area of interacting and relating to others, adds "9/22 note reported Clt does not have an IEP/504. Clt was not attending school due to transportation issues. . . . 10/22 was going to school, grades all a and b. 1/6/23 missing school, dragging his feet getting ready and misses the bus. Reported he is getting bullied at school." *Id.* at 66.

Dr. Chapman's evaluation of E.G.K. was completed on July 13–14, 2022—predating *any* of the above academic evidence. *Id.* at 52–61. Similarly, Dr. Juriga's evaluation, which uses much of the same language as Dr. Chapman's report, was completed on February 28, 2023—predating the June and September 2023 504 Plans and the 2022–2023 Grade Report. *Id.* at 64–68. Although Dr. Juriga's report was issued at the end of February 2023, after the February 8, 2023 504 Plan was issued, Dr. Juriga's report references no academic evidence after January 2023. *See id.* (for example, "9/22 note reported Clt does not have an IEP/504. . . . 10/22 was going to school, grades all a and b. 1/6/23 missing school . . . ."). The relevant time period for consideration of E.G.K.'s disability began on March 14, 2022, and the ALJ's decision was issued on October 11, 2023. *Id.* at 23; *see* 20 C.F.R. § 416.335. It is unclear what academic records either state agency consultant relied upon, *see* AR at 54–55, 65, but neither could have relied on the evidence discussed above, which is plainly inconsistent with both Dr. Chapman's and Dr. Juriga's findings to support their recommendations of "less than marked" and no limitations across the six functional areas. *Compare, e.g., id.* at 57 ("claimant gets good grades", *and id.* at 66 ("grades all

a and b"), *with id.* at 590 (for the 2022–2023 school year, E.G.K. received an "F" or a "D" at the following frequencies: 2 of 9 classes in Q1; 4 of 9 in Q2; 6 of 9 in Q3; and 6 of 9 in Q4. *Id.* E.G.K.'s full-year grades for the seventh grade amounted to four "F's," one "D," a "C" and a "C+," and two "B+'s.").

The ALJ did not reconcile any such discrepancies or discuss the staleness of Dr. Chapman's and Dr. Juriga's evaluations. Instead, the ALJ repeatedly found both opinions to be "persuasive" and purported to support his decision with statements such as "treatment records confirm that the claimant receives passing grades in his mainstream classroom, which suggests that he is able to complete classroom tasks without notable difficulty." *Id.* at 20–23. The ALJ's decision does not, for example, cite the 2022–2023 Grade Report at all, which plainly establishes that for a notable portion of the relevant time period, E.G.K. was notably struggling in school, with each of his teachers commenting that his lack of attendance was contributing to his performance and/or that E.G.K. was struggling to put forth any effort or complete his work—even with an active 504 Plan. *Id.* at 590 (2022–2023 Grade Report); *see id.* at 588–89, 591–92 (February and June 2023 504 Plans). As another example of the ALJ's failure to reconcile record evidence, the ALJ credited Dr. Chapman's and Dr. Juriga's opinions in the area of interacting and relating to others, stating that both consultants noted "that the claimant does not require a behavioral plan and *has no documented behavioral issues,*" while at the same time discounted Dr. A. Brownfield's

opinion[6] because "the record *does document behavioral issues for the claimant that require ongoing formal mental health treatment and medication.*" *Id.* at 21 (emphases added).

"Remand may be warranted where more recent evidence in the record 'directly contradict[s] the older reports of [the child's] functioning on which the ALJ relied' and the ALJ failed to fully analyze the more recent evidence." *Foster v. Comm'r of Soc. Sec. Admin.*, 692 F. Supp. 3d 105, 112 (S.D.N.Y. 2023) (quoting *Blash v. Comm'r of Soc. Sec. Admin.*, 813 F. App'x 642, 644 (2d Cir. 2020)). Remand is warranted here. All three consultative examiners' opinions are stale and thus cannot constitute substantial evidence for the ALJ's findings on functional equivalence. *See Fambo v. Comm'r of Soc. Sec.*, 474 F. Supp. 3d 603, 608 (W.D.N.Y. 2020) ("Medical source opinions that are conclusory, stale, and based on an incomplete medical record may not be substantial evidence to support an ALJ finding." (quotation and brackets omitted)); *Griffith v. Astrue,* No. 08-CV-6004 CJS, 2009 WL 909630, at *9 n.9 (W.D.N.Y. Mar. 31, 2009) ("[T]he State Agency Officials' reports, which are conclusory, stale, and based on an incomplete medical record, are not substantial evidence."); *Suarez v. Comm'r of Soc. Sec.,* 2010 WL 3322536, at *8 (E.D.N.Y. Aug. 20, 2010) ("[B]ecause Dr. Weiss's opinion is both outdated and inconsistent with Dr. Misra's more recent findings, the propositions which the ALJ relied on Dr. Weiss's

---

[6] Similar to Dr. Chapman and Dr. Juriga, Dr. Brownfield's opinion is dated February 23, 2023, predating much of the academic evidence in the record. AR at 582–86.

14

opinion for when determining Plaintiff's RFC should not have been afforded substantial weight without further explanation.").

Further, the ALJ's decision fails to independently analyze the full academic evidence in the available record and fails to reconcile the obvious discrepancies therein. *See, e.g.*, *Archer ex rel. J.J.P. v. Astrue*, 910 F. Supp. 2d 411, 427–28 (N.D.N.Y. 2012) ("[The ALJ] made no attempt to reconcile the overwhelming evidence of persistent disability in the record with his finding of less than marked limitation in several domains of functioning. Such an error is fatal to the Commissioner's motion for judgment on the pleadings."); *see also Nivia D. o/b/o P.L.D. v. Comm'r of Soc. Sec.*, 5:18-CV-0634, 2019 WL 4573262, at *6 (N.D.N.Y. Sept. 20, 2019) (ALJ's are "not required to reconcile every shred of evidence", but they must still "acknowledge relevant evidence and explain [their] rejection of it." (citations omitted)).

This is particularly problematic given that the SSA explains that a child's teachers are "valuable sources of evidence for assessing impairment severity and functioning." *Lucsheena N. o/b/o I.A.K.W. v. Comm'r of Soc. Sec.*, No. 6:20-CV-6760-MJR, 2022 WL 4545693, at *3 (W.D.N.Y. Sept. 29, 2022) (citing SSR 06-03p, 2006 SSR LEXIS 5, 2006 WL 2329939, at *3 (Aug. 9, 2006)) (remanding where the ALJ cherry-picked evidence from a teacher questionnaire). "Courts in this Circuit have recognized that reports from a child claimant's teacher should be afforded significant weight when the reporting teacher had an extended opportunity to observe the claimant's functioning." *Lucsheena N. o/b/o I.A.K.W.*, 2022 WL 4545693, at *3 (quotation omitted). The limited information in the record from E.G.K.'s teachers—

which support that E.G.K. was significantly struggling in school—was simply not discussed in the ALJ's opinion.

These errors are compounded by the ALJ's failure to complete the record with respect to E.G.K.'s academic performance and educational experiences, including teacher questionnaires, the missing page from the June 2023 504 Plan, any reports referenced in any 504 Plan, and additional Grade Reports—at a minimum. *See, e.g., Sandra S. o/b/o V.S. v. Kijakazi*, No. 21-CV-6464L, 2023 WL 2042044, at *2 (W.D.N.Y. Feb. 16, 2023) ("Because the ALJ failed to complete the record with respect to V.S.'s academic performance, such that he was unable to reach a determination based on substantial evidence, remand is necessary. Indeed, courts have routinely remanded similar matters, even where the gap in school records or grade reports comprised only portion of the period under consideration." (collecting cases)); *Rodriguez v. Comm'r*, 2018 U.S. Dist. LEXIS 111043 at *9 (W.D.N.Y. 2018) (remand is appropriate where record did not contain complete educational records). *Cf. White o/b/o T.R.W. v. Berryhill*, No. 17-CV-6367P, 2019 WL 1367382, at *5 (W.D.N.Y. Mar. 26, 2019) (discussing teacher- and school-counselor-questionnaire evidence at length and stating, "it is evident that the ALJ relied upon different aspects of the Questionnaires, other school records, particularly the April 2014 psycho-educational evaluation completed by certified school psychologist . . . , and medical evidence.").

"Because a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record." *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996). Specifically, the ALJ must "investigate and develop the facts and develop the arguments both for and against the granting

of benefits." *Vincent v. Comm'r of Soc. Sec.*, 651 F.3d 299, 305 (2d Cir. 2011). "The ALJ's duty to develop the administrative record encompasses not only the duty to obtain a claimant's medical records and reports, but also the duty to question the claimant adequately about any subjective complaints and the impact of the claimant's impairments on the claimant's functional capacity."[7] *Will o/b/o C.M.K. v. Comm'r of Soc. Sec.*, 366 F. Supp. 3d 419, 424 (W.D.N.Y. 2019) (quotation omitted). "The ALJ's duty to develop the record applies to both *pro se* and represented parties." *Id.* (quotation omitted). However, the ALJ's duty to develop the record is not limitless. *Id.* "[W]here there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information . . . ." *Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999) (quotation omitted). Here, there are obvious gaps in the administrative record and an

---

[7] The Commissioner's argument that, during the hearing before the ALJ, Plaintiff waived an argument about the ALJ's failure to obtain teacher questionnaires, ECF No. 10-1 at 7–8, is mistaken, particularly in light of the discrepancies between the academic evidence and state agency opinions. *See Walters v. Comm'r of Soc. Sec.*, No. 1:19-CV-00020 EAW, 2020 WL 2536799, at *5 (W.D.N.Y. May 19, 2020) ("Although Plaintiff's counsel stated at the administrative hearing that she did not believe any other evidence was outstanding, the ALJ has an independent duty to develop the administrative record and, given he had notice of the questionnaire, the ALJ should have inquired regarding its status."); *Cancel v. Colvin*, 14-cv-2034 (PKC), 2015 WL 865479, at *5 (S.D.N.Y. Mar. 2, 2015) ("It is somewhat troubling that [the plaintiff's] counsel at the 2012 hearing failed to bring these deficiencies in the medical record to the ALJ's attention; counsel is thus at least partly responsible for the ALJ's error. Nevertheless, the law is clear that an ALJ's duty to develop the record exists irrespective of whether the claimant is represented." (alteration in original)); *Harris v. Colvin*, No. 11-CV-1497, 2013 WL 5278718, at *8 (N.D.N.Y. Sept. 18, 2013) ("[I]f the ALJ is understood to have an 'independent' and 'affirmative' duty to develop the record, that duty must include seeking out additional documentation before discounting the treating physician's opinion, even where counsel has previously promised (but failed) to provide the documents."); *see also* AR at 34 ("We were contemplating having—trying to solicit feedback from teachers. But there's a significant problem with the child's absenteeism. And we do not have outstanding teacher questionnaires at this point. So, I believe the record is complete."). If E.G.K.'s teachers in fact cannot provide a meaningful questionnaire given how frequently E.G.K. is absent from school, surely that in and of itself it is a relevant fact for the ALJ to consider on remand.

obvious and meaningful staleness in the state agency evaluations. Remand is required.

In light of this decision to remand, the Court need not address Plaintiff's other arguments. *See Carlin v. Comm'r of Soc. Sec.*, No. 19-CV-6312-LJV, 2020 WL 5995181, at *3 (W.D.N.Y. Oct. 9, 2020) (declining to reach further issues raised by plaintiff because they "may be affected by the ALJ's treatment of this case on remand." (quotation omitted)). However, the Court directs the Appeals Counsel to assess, in constructing its remand order, whether additional instructions not inconsistent with this Decision and Order are warranted for the remanded proceedings.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings, ECF No. 8, is GRANTED, and the Commissioner's cross-motion for judgment on the pleadings, ECF No. 10, is DENIED. The matter is REMANDED under sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this decision.

SO ORDERED.

Dated: March 26, 2026
    Rochester, New York

HON. MEREDITH A. VACCA
UNITED STATES DISTRICT JUDGE